## Missouri State Life Insurance Company, Appellant, v. Estate of Ferdinand Kohl et al., Appellees.

Heard in this court at the October term, 1931. Opinion filed February 1, 1932. Rehearing denied March 4, 1932.

WARREN ROGERS, CARTER, JONES & TURNEY, WILSON & SCHMIEDESKAMP and WILSON & WILSON, for appellant.

JUNE C. SMITH, for appellees.

MR. PRESIDING JUSTICE BARRY delivered the opinion of the court.

Williams Severns, A. Kohl and F. Kohl owned about 3,000 acres of land in Adams county but the legal title was in Severns. Appellant loaned them $175,000 evidenced by five notes executed by Severns, dated November 29, 1920, and secured by a mortgage on the

land. Before the notes were delivered to appellant they were indorsed: "Demand notice of protest and protest waived A. Kohl—F. Kohl." F. Kohl died March 3, 1926, and appellant filed its claim for $222,841.14 based upon the liability of deceased on his indorsements of the notes. The court disallowed the claim.

The notes were Missouri contracts and the rights of the parties under the indorsements must be determined under the laws of that State. The Missouri Negotiable Instruments Act is substantially the same as the Illinois statute and for convenience we will refer to the latter act. The parties agree that the indorsements were for value and not for accommodation. They were placed upon the notes before delivery and the liability created thereby was that of indorsers under section 64 of the act, Cahill's St. ch. 98, ¶ 84, unless, as appellant contends, the waiver made the indorsers primarily liable. Appellees say the waiver only applies to the first indorser and that F. Kohl was an ordinary indorser and secondarily liable. It is unnecessary to determine which of these contentions is right. Appellees make no claim that F. Kohl was released from liability for the failure of appellant to make demand and protest, for the reason, no doubt, that the evidence shows an implied waiver.

On December 7, 1925, Severns, the mortgagor, conveyed the land to F. Kohl, who, by the terms of the deed, assumed and agreed to pay the mortgage. It seems that the deed did not convey all the land. On May 3, 1926, Severns made another deed, including all of the land, to Kohl's wife as trustee under her husband's will and by the terms of the deed she assumed the payment of the mortgage. On May 1, 1926, the trustee gave Burton D. Hurd a written option for the purchase of the land at $150 per acre on condition that within 60 days he should secure an extension of the

mortgage until July 1, 1929. If he complied with the condition he was to receive a deed, assume the payment of the mortgage and give the trustee a second mortgage for the balance of the purchase price.

Hurd, on June 8, 1926, procured an extension of the principal of the mortgage debt, on certain conditions, until July 1, 1929, and the payment of delinquent interest and the repayment of taxes advanced by appellant, until July 1, 1927. The trustee under Kohl's will conveyed the premises to Hurd on July 1, 1926, and by the terms of the deed he assumed the payment of the mortgage and gave the trustee a second mortgage for $200,000. In April, 1927, appellant agreed to extend the time for the payment of the delinquent interest and taxes to July 1, 1929, but the agreement was simply to wait for money already due and owing and there was no consideration for that extension. In April, 1927, Hurd took out a life insurance policy for $100,000 payable to appellant as a creditor as its interests might appear. The undisputed evidence is that the issuance of the policy had no connection with the extension agreement.

Appellees contend that F. Kohl was only secondarily liable on his indorsements, that appellant extended the time of payment without his assent or that of his estate and that he and his estate were released under section 119 of the act, Cahill's St. ch. 98, ¶ 141. We cannot agree with that contention. Hurd, who secured the extension, was not a party to the notes and had not even assumed the payment of the same at the time the extension was granted. An extension given to a stranger to a note will not operate as a release of one who is secondarily liable under said section of the act. *Brosemer v. Brosemer,* 162 N. Y. S. 1067. Appellees further contend that the extension was granted to a subsequent vendee who had assumed the payment of the mortgage, that it was given without the knowledge

and consent of F. Kohl or his estate and without the assent of the mortgagor and that by reason thereof Kohl's estate and the mortgagor were released from liability.

When the deed was made to F. Kohl he became a principal debtor and Severns a surety and under the agreement in the deed to Hurd he became a principal debtor and the Kohl estate a surety, yet that would be true only as between the parties to each deed. Severns and the Kohl estate are liable to appellant, the mortgagee, as principal debtors, unless appellant has released them from liability and has agreed to look solely to Hurd for payment. *Webster v. Fleming,* 178 Ill. 140; *Scholten v. Barber,* 217 Ill. 148. There is no evidence that appellant released Severns or the Kohl estate and agreed to look solely to Hurd for payment unless it can be said that there was a valid and binding extension agreement given to Hurd without the knowledge and consent of Severns and the Kohl estate which would have that effect.

The extension agreement of June 8, 1926, if made for Hurd and not the Kohl estate was not a valid and binding contract. When granted, Hurd had but an option to purchase the land. He had no title and had not assumed the payment of the mortgage. Hurd did not receive his deed until July 1, 1926. He did not assume the payment of the mortgage until that time. It was then, and not before, that he became a principal debtor and the Kohl estate a surety even as between themselves. The extension was not made to one who had assumed the payment of the mortgage at the time it was granted. An extension granted to a stranger to the debt is invalid.

In the option given to Hurd for the purchase of the land, the trustee of the Kohl estate required him to procure an extension of the mortgage before he could exercise his option and secure a right to a conveyance.

That was sufficient, of itself, to show that the extension was not made without the knowledge and consent of the Kohl estate. *Schafer v. Jackson*, 155 Iowa 108, 135 N. W. 622. A lessor who stipulates in the lease that his lessee at his own expense may place buildings or improvements on the leased property thereby authorizes or knowingly permits the lessee to improve the property and he cannot avoid a mechanic's lien occasioned thereby. *Fehr Const. Co. v. Postl System*, 288 Ill. 634.

There is other evidence that Kohl and his trustee were actively engaged in procuring an extension of the mortgage. It clearly appears that early in 1926, Kohl was being pressed for payment. Some of the notes were past due and the last one would be due July 1, 1926. Kohl met Hurd and was convinced that Hurd had a good plan for the development and sale of the land but it would take time to work it out. Kohl took Hurd to appellant's office, explained the plan and told appellant's president they wanted to enter into a contract by which the plan could be carried out; that if the contract was made Kohl would want an extension of the mortgage. Kohl and his wife called on appellant's president on March 1, 1926. Kohl was then in very feeble health and was much worried about the mortgage and said he wanted an extension. The wife told the president that she feared her husband would not survive unless an extension was granted. The president told them that it would be granted and they could go home knowing that a satisfactory extension would be made at the proper time. On that day Kohl gave Hurd an exclusive agency contract and died two days later.

A few days after his death the attorney for his estate and Hurd called upon appellant's president and the attorney told him about the agency contract Kohl had made with Hurd; that if an extension of the mort-

gage could be secured the Kohl estate would renew that contract and Hurd would handle the land for the estate. The president told the attorney that appellant would be glad to co-operate with the estate but before he would extend the mortgage he would have to investigate Hurd and inspect the land. On April 1, 1926, the trustee under Kohl's will renewed the agency contract between Kohl and Hurd and gave Hurd the complete management of the land. On May 4, 1926, appellant's president wrote the attorney for the estate that on a certain day he would inspect the land and asked him to go along. On May 5, 1926, the attorney replied that he could not go, but that "Mr. Burton D. Hurd, the representative of the Kohl estate" would be there. The inspection was to be made to enable the president to decide whether the extension applied for by the attorney of the Kohl estate should be granted. When the attorney wrote the letter of May 5, 1926, he did not inform appellant's president that Hurd then held an option for the purchase of the land.

In a letter to Hurd, dated June 8, 1926, appellant's president agreed to extend the mortgage on certain conditions. The letter was handed to Hurd on that day and on the same day Hurd delivered it to the attorney for the Kohl estate. A week later the attorney wrote appellant that Hurd had delivered to him the extension agreement, reciting the terms thereof, and closed by saying: "We appreciate this extension and we are confident that Mr. Hurd will be able to make sufficient sales of the property within the time allowed to comply with the conditions specified in President Singleton's letter."

Appellant's president conducted all of the negotiations pertaining to the extension. He testified that when he granted the extension he had no information that Hurd held an option for the purchase of the land; that he dealt with Hurd as the representative of. the Kohl estate and though he was granting the extension

to the estate. Hurd, a witness for appellees, testified that he did not think appellant's president knew that he was a prospective purchaser of the land at the time the extension was granted. Under the evidence appellant's president was fully justified in believing, from the representations made to him, that when he granted the extension it was for and on behalf of the Kohl estate and not to Hurd as a prospective purchaser in his own interest.

There is no escape from the conclusion that the extension was granted with the knowledge and consent of the trustee of the Kohl estate. We cannot agree with the contention that she had no power or authority to accept or agree to an extension. The land covered by the mortgage was devised to her as trustee with full power and authority to sell and convey by deed, mortgage or otherwise at her discretion and without an order of court. Having the express power to mortgage the land she certainly had the power to secure and accept an extension of the existing mortgage. There is no evidence that the extension was made without the knowledge and consent of Severns.

We have carefully considered all of the arguments presented and our conclusion is that appellant has done nothing that would release Kohl or his estate from the liability he assumed by the indorsements in question. The judgment is reversed and the cause remanded with directions to allow the claim for the balance due on the notes, principal and interest, as a sixth class claim.

*Reversed and remanded with directions.*

The clerk will insert in the judgment the following: "The Court finds that at the death of the deceased he was indebted to appellant for the balance due on the notes in question by reason of his indorsements; that the alleged extension was invalid and void but that even if it were valid it was granted with the assent of the deceased and his estate."